**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

Amanda Rodriguez and Felix Rodriguez, Wife
and Husband,
        Plaintiffs

The First Liberty Insurance Corporation,
        Defendant

: NO.
:
:
:
:
: CIVIL ACTION
:

**18 2644**

FILED
JUN 22 2018
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

The First Liberty Insurance Corporation, by its attorneys, Brigid Q. Alford, Esquire and Marshall Dennehey Warner Coleman & Goggin, hereby files Notice of Removal of this case, from the Court of Common Pleas of Northampton County, Pennsylvania, where it is now pending at No. C48CV2018-3266 , to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and in support thereof, states the following:

1.      Plaintiffs initiated this action by filing a Praecipe for Writ of Summons on April 17, 2018, in the Court of Common Pleas of Northampton County, Pennsylvania, docketed at Civil Action No. June, 1 Term, 2018, No. 3266.

2.      On June 1, 2018, in response to Defendant's Rule for a Complaint, Plaintiffs filed their Complaint. A true and correct copy of the Complaint is attached hereto, made part hereof, and identified as Exhibit A.

3.      Plaintiffs, through their counsel, served a copy of the Complaint on defense counsel on June 4, 2018.

4.      This Notice of Removal is timely, in accordance with 28 U.S.C. §§1441 and 1446(b)(1).

5.      In the Complaint, Plaintiffs aver that they are residents of the Commonwealth of Pennsylvania. *Complt.*, para. 1.

6.      The First Liberty Insurance Corporation is a foreign corporation, with a principal place of business at 175 Berkeley Street, Boston, Massachusetts.

7.      Plaintiffs allege, *inter alia.*, that, following a motor vehicle accident that occurred on or about September 14, 2011, they presented a claim for First Party Medical Benefits and Underinsured Motorist Benefits to Defendant, under an Auto Policy issued to them by Defendant, and that they and Defendant have failed to agree on the amounts of First Party Medical Benefits and Underinsured Motorist Benefits to which they are or may be entitled to recover as a result of the 2011 accident.

8.      The Complaint purports to set out three individually enumerated causes of action:

      a.      COUNT I - First Party Medical Benefits

      b.      COUNT II - COMPEL ARBITRATION ON UNDERINSURED MOTORIST CLAIM

      c.      COUNT III - UNDERINSURED MOTORIST CLAIM - BREACH OF CONTRACT

9.      Based upon the allegations set forth in Plaintiffs' Complaint, the amount in controversy in this action is in excess of $75,000.00, exclusive of interest and costs.

10.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332, based upon the diversity of citizenship of the parties and the amount in controversy, and removal is appropriate pursuant to 28 U.S.C. § 1441.

11.     The Notice of Removal has been filed within thirty (30) days after service of the Complaint on The First Liberty Insurance Corporation.

12.     Contemporaneously with the filing of this Notice, and in accordance with 28 U.S. C. §1446(d), written notice of the filing has been given to Plaintiffs.

13.     Promptly after filing with the Court and the assignment of a civil action number, a copy of this Notice of removal will be filed with the Court of Common Pleas of Northampton County, Pennsylvania, also in accordance with 28 U.S.C. § 1446(d).

WHEREFORE, The First Liberty Insurance Corporation requests that this action is removed from the Court of Common Pleas of Northampton County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania.

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

Date: 06/22/2018

BY: _Brigid Q. Alford_
Brigid Q. Alford, Esquire
Pa No. 38590
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
(717) 651-3710
FAX (717) 651-3707
bqalford@mdwcg.com
*Attorney for Defendant The First Liberty Insurance Corporation*

COMMONWEALTH OF PENNSYLVANIA   :
                                      SS

COUNTY OF CUMBERLAND             :

## AFFIDAVIT

**Brigid Q. Alford, Esquire,** being duly sworn according to law deposes and says that the facts set forth in the foregoing Notice of Removal are true and correct to the best of her knowledge, information and belief.

_____
Brigid Q. Alford, Esquire

Sworn to and subscribed
Before me this ___ day
of _____ 2018

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lisa J. Wallace, Notary Public
East Pennsboro Twp., Cumberland County
My Commission Expires Jan. 10, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing was served upon the following via Electronic Filing System on the date specified below:

Michael A. Snover, Esquire
2571 Bagloyos Circle
Suite B25
Bethlehem, PA 18020
*Attorneys for Plaintiffs Amanda Rodriguez and Felix Rodriguez, w/h*

**FILED**

JUN 22 2018

KATE BARKMAN, Clerk
By_____Dep. Clerk

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

Date: 06/22/2018

BY: _Brigid Q Alford_____
Brigid Q. Alford, Esquire
*Attorneys for Defendant*

# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

**COPY**

Amanda Rodriguez and Felix Rodriguez, Wife
and Husband,

      Plaintiffs

vs.

The First Liberty Insurance Corporation,

      Defendant.

NO. C48CV2018-3266

CIVIL ACTION
JURY TRIAL DEMANDED

## NOTICE

   You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by   attorney and filing in writing with the Court your defenses or objections to the claims   set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

   YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

   IF YOU CANNOT AFFORD TO HIRE A LAWYER, THE OFFICE SET FORTH BELOW MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
Northampton County Bar Association
P.O. Box 4733
Easton, PA 18042
Telephone (610) 258-6333

   The Court of Common Pleas is required by law to comply with the Americans with Disabilities Act of 1990. For information about accessible facilities and reasonable accommodations available to disabled individuals having business before the Court, please call (610) 559-3000. All arrangements must be made at least 72 hours prior to any hearing or business before the Court. You must attend the scheduled conference or hearing.



IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

Amanda Rodriguez and Felix Rodriguez, Wife
and Husband,

                          Plaintiffs

                         vs.

The First Liberty Insurance Corporation,
                         Defendant.

NO. C48CV2018-3266

CIVIL ACTION
JURY TRIAL DEMANDED

## **COMPLAINT**

1.      The Plaintiffs, Amanda Rodriguez and Felix Rodriguez, Wife and Husband, are adult individuals currently residing at 3923 Linden Street, Bethlehem, Northampton County, Pennsylvania, 18020.

2.      The Defendant, The First Liberty Insurance Corporation, is a corporation licensed to do business in the Commonwealth of Pennsylvania with their home office located at P.O. Box 515097, Los Angeles, CA  90051-5097. At all times material hereto, the said Defendant was authorized to issue policies of motor vehicle insurance under the Pennsylvania Motor Vehicle Financial Responsibility law, and issued a policy to the Plaintiffs, a true and correct copy of which is attached hereto as Exhibit "A," together with amendments thereto. Said policy provided for various coverages under the PMVFRL including first party medical benefits in the amount of $25,000.00, $50,000.00 in income loss, underinsured motorists benefits in the amount of $50,000.00/$100,000.00 times 4 vehicles stacked for a total of $200,000 available to the instant claim (assuming the sign downs are valid, and $400,000 available if sign downs are not valid), all with full tort coverage at the time of the accident.

3.      While the above-mentioned policy was in effect, on or about September 14, 2011, the Plaintiff, Amanda Rodriguez, was the driver of a vehicle stopped in traffic on SR 412 at SR 611 when

she was struck by a motor vehicle at which time she received serious injuries, requiring extensive medical treatment. At the time of the accident Plaintiff, Amanda Rodriguez, was operating a 2007 Honda Element, insured by Defendant, The First Liberty Insurance Corporation, and therefore by operation of law she is entitled to first party benefits provided on the vehicle which she was driving at the time of this accident.   A true and correct copy of the declaration page and policy is attached hereto as Exhibit "A."

## FIRST CAUSE OF ACTION

## COUNT I

## FIRST PARTY MEDICAL BENEFITS

### AMANDA RODRIGUEZ

vs.

### THE FIRST LIBERTY INSURANCE CORPORATION

4.      Plaintiff incorporates herein by reference paragraphs 1-3 as if more fully set forth at length herein.

5.      Plaintiff, Amanda Rodriguez, submitted to Defendant an application for benefits seeking the payment of medical expenses and/or wage loss.

6.      As a direct and proximate result of the above-described accident, the Plaintiff, Amanda Rodriguez, has sustained serious and severe injuries, including but not limited to, back pain, neck pain, leg pain, shoulder pain with associated numbness, weakness, clicking and impaired range of motion, spasm, disc injury, and/or aggravation of conditions, all of which has been to her great financial loss.

7.      As a result of the Plaintiff having received reasonable and necessary medical treatment related to the aforesaid accident, certain medical expenses were billed to and paid by the Defendant. However, the Defendant has since denied paying for reasonable and necessary medical expenses and prescriptions properly submitted and further indicated that it will no longer pay for neurosurgical

medical services for this accident. The date of last payment by the Defendant of medical expenses related to the accident was on or about July 8, 2014.

8.    It is believed and therefore averred that the Defendant received further bills for medical treatment relating to the aforesaid accident which have not been paid. For, example, the Defendant acknowledged receiving bills for neurosurgery services on or about 01/30/2018, specifically bills relating to evaluation and care provided by Christopher Lycette, M.D., and/or related entities. The Defendant submitted the same to Peer Review.

9.    On or about March 16, 2018, the Defendant after receiving a Peer Review Report that improperly addressed the issue of causation under the guise of reasonable and necessary medical care, improperly relied upon and/or cited the invalid peer review as a reason for denying the bills related thereto, and anticipatorily breached the contract by refusing to pay for any further care related to neurosurgery services. Defendant has not complied with the Peer Review regulations to enable it to deny bills based upon a Peer Review. Defendant has improperly and without a legal or reasonable basis denied first party benefits to the Plaintiff, Amanda Rodriguez.

10.    Plaintiff has not exhausted her first party benefits.

11.    As a result of the accident, the Plaintiff, Amanda Rodriguez, has been and will be obliged to receive medical attention and care and to expend various sums of money or to incur various expenses properly due and allowable under the policy of insurance, and Plaintiff, Amanda Rodriguez, may be obliged to expend sums for medical treatment in the indefinite future.

12.    As a result of the accident, the Plaintiff, Amanda Rodriguez, has been and will be obliged to receive medical attention and care and to expend various sums of money for treatment from providers including but not limited to Lehigh Valley Hospital Muhlenberg, Dimensions Health Corporation, Maryland Med Network, Kramer and Maehrer, LLC, LVPG Physiatry, LVPG Family Medicine, Dr. Christopher Lycette, and various prescriptions   Defendant has refused to pay any of these bills which

results in the filing of this Complaint in this matter and the incurring of court costs and attorney fees.

13.    In addition to the medical expenses, Plaintiff, Amanda Rodriguez, has been caused to miss time from work as a result of her accident-related injuries for which Plaintiff makes claim under the first party wage loss coverage.

14.    In prosecuting this first party benefit action, Plaintiffs have secured the services of Michael A. Snover, Esq., at a reasonable rate of $300.00 per hour.

15.    Payment for the Plaintiff, Amanda Rodriguez' medical care and treatment and income continuation is due under the policy, and Defendant is refusing to pay the same.    16.

Defendant has breached the contract of insurance by failing to pay benefits that are due, and Defendant continues to anticipatorily breach the insurance contract by refusing to pay for the treatment incurred and any future treatment that may be related to the accident and which is reasonable and necessary treatment.

**WHEREFORE,** the Plaintiff respectfully requests this Court to grant the following relief:

( a )    Award Plaintiff, Amanda Rodriguez, medical benefits plus interest for past services and supplies and direct Defendant to pay future expenses, and direct Defendant to pay wage loss benefits;

( b )    Award attorney's fees pursuant to Section 75 Pa.C.S. Section 1716 – 1798 (a) and (b) of the Pennsylvania Motor Vehicle Responsibility Act, based on actual hours expended up to the date of final judgment in this matter;

( c )    Award Plaintiff all costs incurred in filing and prosecuting this suit.

( d )    All other relief allowable under Pennsylvania law or as deemed justified by the Court.

## SECOND CAUSE OF ACTION

### COUNT I

## COMPEL ARBITRATION ON UNDERINSURED MOTORIST CLAIM

AMANDA RODRIGUEZ and FELIX RODRIGUEZ

vs.

THE FIRST LIBERTY INSURANCE CORPORATION

16.    Plaintiff incorporates herein by reference paragraphs 1-15 as if more fully set forth at length herein.

17.    At the time of the accident above-described, the Plaintiff was struck by the tortfeasor, Christopher M. Boles who was underinsured. The accident was caused solely by the negligence of the underinsured tortfeasor.

18.    Plaintiff, Amanda Rodriguez's injuries and losses were caused solely by the negligence of the underinsured tortfeasor, Christopher Boles.

19.    As a result of the accident, Plaintiff suffered personal injuries and losses.

20.    At the time of the accident, the vehicle registered to Plaintiff, Felix Rodriguez and operated by Plaintiff, Amanda Rodriguez, a 2007 Honda Element, was insured with Defendant, under policy # A06-288-343140-70 1 3 ("policy") for underinsured motorists benefits. A copy of the declarations page and policy of the pertinent policy of insurance in Plaintiff's possession is attached as Exhibit "A".

21.    At all material times hereto, Plaintiffs were named insureds under the policy.

22.    At all material times, Defendant owed Plaintiffs the utmost duties of good faith and fair dealing.

23.    At the time of the aforesaid accident, the underinsured tortfeasor was the owner and operator of a 2010 Kia insured by Progressive Advanced Insurance Company, under policy number 66159339-2. The policy provided liability coverage in the amount of $15,000.00 per person and

$30,000.00 per accident.

24.     On or about October 20, 2016, Defendant granted Plaintiffs consent to settle with the

tortfeasor insured by Progressive Advanced Insurance Company within the tortfeasor's $15,000.00

policy limits, acknowledging that the credit that the Defendant would receive in the underinsured

motorist proceeding would be $15,000.00.

25.     On or about February 14, 2017, the Plaintiffs, Amanda and Felix Rodriguez executed a

release in favor of the tortfeasor, Christopher Boles.

26.     The policy issued by Defendant contained an arbitration clause stating as follows:

## ARBITRATION

**A. If we and an "insured" do not agree:**

**1. Whether that person is legally entitled to recover damages under this Part; or**

**2. As to the amount of damages;**

**either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will**

**select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.**

**B.  Each party will:**

**1. Pay the expenses it incurs; and**

**2. Bear the expenses of the third arbitrator equally.**

**C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:**

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

27.     On or about April 16, 2018, Plaintiffs demand arbitration pursuant to the terms of the policy, named Plaintiffs' arbitrator, and requested Defendant to name its arbitrator within 20 days.

28.     On or about April 19, 2018, the Defendant's adjuster sent a letter directly in conflict with its previous provision of the policy in effect at the time of the accident in that it now states that there was no arbitration clause contained within the policy at the time of the accident. The UIM endorsement to which it refers and upon which Defendant apparently relies does not eliminate the arbitration clause contained in the policy. Rather, the endorsement specifically states "With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement." This is contrasted to the uninsured motorist endorsement which states that the endorsement specifically replaces in its entirety the UIM provisions in the original policy.

29.     Despite demand for the appointment of the Defendant's arbitrator, the Defendant failed to appoint an arbitrator to date or otherwise respond to the request in breach of the policy.

30.     The Court has authority to compel the appointment of an arbitrator for this portion of

Plaintiffs' claim for relief for underinsured motorist's benefits. Specifically, the pertinent provisions of

the law governing compelling arbitration found in title 42 provides as follows:

§ 7302.  Scope of subchapter.

(a)  General rule.--An agreement to arbitrate a controversy on a
nonjudicial basis shall be conclusively presumed to be an agreement to
arbitrate pursuant to Subchapter B (relating to common law arbitration)
unless the agreement to arbitrate is in writing and expressly provides for
arbitration pursuant to this subchapter or any other similar statute, in
which case the arbitration shall be governed by this subchapter....
§ 7303.  Validity of agreement to arbitrate.

A written agreement to subject any existing controversy to arbitration or
a provision in a written agreement to submit to arbitration any
controversy thereafter arising between the parties is valid, enforceable
and irrevocable, save upon such grounds as exist at law or in equity
relating to the validity, enforceability or revocation of any contract.

§ 7304.  Court proceedings to compel or stay arbitration.

(a)  Compelling arbitration.--On application to a court to compel
arbitration made by a party showing an agreement described in section
7303 (relating to validity of agreement to arbitrate) and a showing that an
opposing party refused to arbitrate, the court shall order the parties to
proceed with arbitration. If the opposing party denies the existence of an
agreement to arbitrate, the court shall proceed summarily to determine
the issue so raised and shall order the parties to proceed with arbitration
if it finds for the moving party. Otherwise, the application shall be
denied....

(c)  Venue.--If a controversy alleged to be or not to be referable to
arbitration under the agreement is also involved in an action or
proceeding pending in a court having jurisdiction to hear applications to
compel or stay arbitration, the application shall be made to that court.
Otherwise, subject to section 7319 (relating to venue of court
proceedings), the application may be made in any court of competent
jurisdiction.

(d)  Stay of judicial proceedings.--An action or proceeding, allegedly
involving an issue subject to arbitration, shall be stayed if a court order to
proceed with arbitration has been made or an application for such an
order has been made under this section. If the issue allegedly subject to
arbitration is severable, the stay of the court action or proceeding may be
made with respect to the severable issue only. If the application for an
order to proceed with arbitration is made in such action or proceeding
and is granted, the court order to proceed with arbitration shall include a

stay of the action or proceeding.

(e) No examination of merits.--An application for a court order to
proceed with arbitration shall not be refused, nor shall an application to
stay arbitration be granted, by the court on the ground that the
controversy lacks merit or bona fides or on the ground that no fault or
basis for the controversy sought to be arbitrated has been shown.

§ 7305.  Appointment of arbitrators by court.

If the agreement to arbitrate prescribes a method of appointment of
arbitrators, the prescribed method shall be followed. In the absence of a
prescribed method or if the prescribed method fails or for any reason
cannot be followed, or when an arbitrator appointed fails to act or is
unable to act and his successor has not been appointed, the court on
application of a party shall appoint one or more arbitrators. An arbitrator
so appointed has all the powers of an arbitrator specifically named in the
agreement.

31.     The Court should appoint the second arbitrator and order the Plaintiff's previously

appointed arbitrator and the arbitrator that it appointed by the Court to agree to a third arbitrator within

20 days, and if there is a failure to agree, for the Court, upon application, to appoint a third arbitrator.

32.     All other claims aside from the Underinsured Motorist Claim should not be stayed but

allowed to proceed while the UIM claim is being litigated in arbitration.

33.     After verdict in the UIM arbitration proceeding, should there be a need to confirm the

arbitration award, or the matter otherwise be litigated further, the instant action should remain pending

for at least 60 days after the arbitration award is made.


WHEREFORE, the Plaintiffs hereby respectfully request that the Court declare the rights of the

parties and Order the UIM claim to arbitration and appoint one or more arbitrators to conduct the

arbitrators as set forth in this Complaint, or make such Order as is appropriate and just under the

circumstances.

## THIRD CAUSE OF ACTION

### COUNT I

### UNDERINSURED MOTORIST CLAIM-BREACH OF CONTRACT

AMANDA RODRIGUEZ and FELIX RODRIGUEZ

vs.

THE FIRST LIBERTY INSURANCE CORPORATION

34.     Plaintiff incorporates herein by reference paragraphs 1-33 as if more fully set forth at length herein.

35.     In the event that the Court were to deny the request to compel arbitration pursuant to the policy of insurance, or in the even that the matter should be tried in this Court after the arbitration award is essentially appealed de novo, the Plaintiffs file this instant Third Cause of Action for Underinsured Motorists benefits, and demand a jury trial for same.

36.     At all material times hereto, the policy provided Underinsured Motorist Benefits Coverage ("UIM") covering the accident.

37      As a result of her injuries, Plaintiffs, submitted a claim to the tortfeasor's insurance carrier which was settled within the liability policy, whereby the Defendant instantly receives a credit of $15,000.00 towards Plaintiffs' total damages.

38.     At all material times hereto, the tortfeasor had $15,000 in bodily injury coverage.

39.     At all material times hereto, the tortfeasor was underinsured.

40.     At all material times, the tortfeasor's limits were insufficient to fully cover Plaintiffs' losses.

41.     At all pertinent times, Defendant was provided timely notice of Plaintiffs' claims, and complied with all conditions precedent to instituting suit.

42.     On or about October 20, 2016, Defendant waived subrogation and granted Plaintiffs consent to settle with the tortfeasor insured by Progressive Advanced Insurance Company within the

tortfeasor's $15,000.00 policy limits, acknowledging that the credit that the Defendant would receive in the underinsured motorist proceeding would be $15,000.00.

43.     On or about February 14, 2017, the Plaintiffs, Amanda and Felix Rodriguez executed a release in favor of the tortfeasor, Christopher Boles.

44.     On February 10, 2017, the Defendant advised that based upon the incomplete information that they had that they did not evaluate the case in excess of the third party credit.

45.     On or about April 19, 2018, the Defendant's adjuster sent a letter directly in conflict with its previous provision of the policy in effect at the time of the accident in that it now states that there was no arbitration clause contained within the policy at the time of the accident. The UIM endorsement to which it refers and upon which Defendant apparently relies does not eliminate the arbitration clause contained in the policy. Rather, the endorsement specifically states "With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement." This is contrasted to the uninsured motorist endorsement which states that the endorsement specifically replaces in its entirety the UIM provisions in the original policy.

46.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, has sustained serious and severe injuries, including, but not limited to, back pain, neck pain, leg pain, shoulder pain with associated numbness, weakness, clicking and impaired range of motion, spasm, disc injury, and/or aggravation of conditions, all of which has been to her great financial loss.

47.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, has suffered great mental anguish and physical pain to the date of the filing of this Complaint, all of which has been to her great financial loss.

48.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, will continue to suffer great mental anguish and physical pain into the future, all of which will be to her great financial loss.

49.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, has been required to expend large sums of money and incur large bills necessary for her treatment and/or property damage, all of which has been to her great financial loss.

50.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, will have to expend large sums of money into the future due to the nature of the injuries sustained by the Plaintiff.

51.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, has been unable to pursue and enjoy the usual activities of life of an individual of the Plaintiff's age and has suffered a loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasures of life up to the date of the filing of this Complaint, all of which has been to her great financial loss.

52.     As a direct and proximate result of the above-describe occurrence, the Plaintiff, Amanda Rodriguez, will be unable to pursue and enjoy the usual activities of life of an individual of the Plaintiff's age and she will suffer a loss of enjoyment of life, loss of life expectancy, loss of happiness and loss of the pleasures of life throughout the remainder of her life, all of which will be to her great financial loss.

53.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, has been unable to pursue her usual occupation for extended periods of time from the date of the accident upon which this cause of action is based and up to the date of the filing of this Complaint, and has suffered lost wages and other lost employment benefits up to the date of the filing of this Complaint, all of which has been to her great financial loss.

54.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, will be unable to pursue her usual occupation for extended periods of time into the future, and will suffer lost wages and other lost employment benefits into the future, all of which will be to her great financial loss.

55.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Amanda Rodriguez, has suffered and/or will suffer a loss of earning power and capacity by virtue of her injuries.

56.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Felix Rodriguez, has been deprived of the assistance, society and companionship of Amanda Rodriguez, up to the filing of this Complaint, all of which has been to his great financial loss.

57.     As a direct and proximate result of the above-described occurrence, the Plaintiff, Felix Rodriguez, will, in the future, be deprived of the assistance, society and companionship of Amanda Rodriguez, all of which has been to his great financial loss

58.     In accordance with the policy of insurance Plaintiffs made a claim for benefits under the policy at issue.

59.     Upon information and belief, Defendant improperly, unjustifiably and unconscionably attempted to deny benefits due and/or failed to timely pay benefits due under the policy pursuant to a bias.

60.     Defendant misrepresented and deliberately under-evaluated Plaintiff's UIM claim.

61.     Defendant has refused and failed to pay the reasonable value of Plaintiff's UIM claim.

62.     It is believed and therefore averred that the value of Plaintiff's claim exceeds Defendant's limits, or in the alternative, that the Defendant has breached the contract by failing to offer a fair value on the claim.

63.     Defendant has wrongfully withheld benefits owed to Plaintiff pursuant to the policy.

64.     Defendant did so by knowingly elevating its financial interests above the interests of its insured.

65.     As a further consequence of Defendant's breach of the Insurance Policy,

Defendant has been unjustifiably enriched to the detriment of Plaintiffs.

66.     As a further consequence of Defendant's breach of the Insurance Policy, Plaintiffs

have suffered losses, including but not limited to loss of use of benefits payable.

67.     Defendant's actions in failing to make full payment of the Plaintiffs claim in a

timely fashion allowed Defendant to retain money that should have been paid out and to invest

those sums in such a fashion, which in essence allowed them to derive profit from investing

money which belonged to Plaintiffs.

68.     The actions of Defendant described in this complaint represent a breach of

contract.

69.     As a result of Defendant's actions as described they breached their obligation of

good faith and fair dealing.

70.     Plaintiff has been damaged in a sum not yet fully determined but in any event to

be proven at the time of trial.


WHEREFORE, Plaintiffs demand judgment against the Defendant for a sum in excess of

Fifty Thousand ($50,000.00) Dollars and in excess of the compulsory arbitration limits.


MICHAEL A. SNOVER
2571 Baglyos Circle, Suite B-25
Bethlehem, PA 18020
ID No. 49786
(484) 821-1005

Date:  June 1, 2018

## VERIFICATION

I, Michael A. Snover, Esquire, Attorney for the Plaintiff, being duly sworn according to law, depose and say that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  This Verification is subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

MICHAEL A. SNOVER, ESQUIRE

Dated:  June 1, 2018

2M2731100197

**MICHAEL A. SNOVER, ESQ.**
ATTORNEY AT LAW
2571 BAGLYOS CIRCLE
SUITE B25
BETHLEHEM, PA 18020
PHONE (484) 821-1005
FAX (484) 821-1009
E-MAIL: SNOVERLAW@AOL.COM

September 28, 2011

The First Liberty Insurance Corporation
P.O. Box 1052
Montgomeryville, PA 18936-1052

*Attention: Sasha Brown, Claims Dept.*

Re:    *Our Client:*          Amanda Rodriguez
       *Your Insured:*        Amanda Rodriguez
       *Date of Incident:*    *September 14, 2011*
       *Claim #:*             *LA830-020357256-02*

Dear Ms. Brown:

    Please be advised this office represents Amanda Rodriguez in connection with injuries and other damages sustained in an accident occurring on the above-referenced date.

    Kindly acknowledge receipt of this claim in writing.  Please provide us with a certified copy of the limits of coverage and/or the declaration sheet of your policyholder.  Thank you in advance for your attention to this matter.

                Very truly yours,

                Michael A. Snover

MAS/las



**EXHIBIT "A"**          **PAGE A1**

 **Liberty Mutual.**

**Liberty Mutual Group**

PO Box 9099
150 Liberty Way
Dover, NH 03820
Telephone (603) 740-1200

November 22, 2011

STACY SHERMAN
PO BOX 1128
BLUE BELL, PA 19422

**RE: AMANDA  RODRIGUEZ**
**AO6-288-343140-70**
**DOL: 9/14/2011**
**POLICY EFFECTIVE:  6/16/2011**

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

Jody L. Welch, Office Assistant
Dover Personal Market Production
November 22, 2011

JW
Enclosures

## EXHIBIT "A"          PAGE A2

# Policy Declarations

## A summary of your auto insurance coverage



**Liberty Mutual.**

Reason for your new declarations page: Endorsement 01
- Add Anti-Lock Braking System   • Add Veh 4
  Veh 4
- Change Veh Performance Veh 2

Effective date of this change: 06/16/2011



### ACTION REQUIRED:

Please review and keep for your records.

### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Felix Rodriguez<br>Amanda Rodriquez |
| Policy Number: | AO6-288-343140-70 1 3 |
| Policy Period: | 06/16/2011-06/16/2012 12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 3923 Linden St<br>Bethlehem PA 18020-4556 |
| Affinity Affiliation: | IRCO Community Federal Credit Union |



### QUESTIONS ABOUT YOUR POLICY?
**By Phone**
For Service:
1-800-225-7014
**Liberty Mutual**
100 Lincolnway West
Mishawaka, IN 46544

To report a claim
1-800-2CLAIMS
(1-800-225-2467)

### VEHICLES COVERED BY YOUR POLICY

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 1989 | TOYOTA | CELICA | JT2ST67L3K7344539 |
| 2 | 2000 | HONDA | PRELUDE | JHMBB6240YC004824 |
| 3 | 2003 | HONDA | CIVIC | 1HGEM21963L062588 |
| 4 | 2007 | HONDA | ELEMENT | 5J6YH28707L000317 |

### COVERAGE DETAILS

Your total annual policy premium for all covered vehicles is shown below
A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

**THIS POLICY COVERS COLLISION DAMAGE TO RENTAL VEHICLES.**

### COVERAGE INFORMATION

Premium Adjustment from 06/16/2011 to 06/16/2012
        VEH 4
        $813

Total Adjustment: $813.00

| | |
|---|---|
| Total Annual Policy Premium: | $4,952.00 |

Your discounts and benefits have been applied. Includes state sales tax and local surcharges where applicable.
THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.

**EXHIBIT "A"        PAGE A3**

**COVERAGE INFORMATION** *(continued)*

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | | |
|---|---|---|---|---|---|---|
| | | | VEH 1 | VEH 2 | VEH 3 | VEH 4 |
| **A. Liability** | | | $339 | $437 | $598 | $232 |
| Bodily Injury | $ 100,000 | Each Person | Yes | Yes | Yes | Yes |
| | $ 300,000 | Each Accident | | | | |
| Property Damage | $ 100,000 | Each Accident | | | | |
| Full Tort Option Selected | | | | | | |
| **C. Uninsured Motorists** | | | | | | |
| Uninsured Motorists | $ 50,000 | Each Person | $37 | $37 | $37 | $37 |
| Bodily Injury | $ 100,000 | Each Accident | | | | |
| Full Tort Option Selected | | | | | | |
| **Underinsured Motorists** | | | | | | |
| Underinsured Motorists | $ 50,000 | Each Person | $129 | $129 | $129 | $129 |
| Bodily Injury | $ 100,000 | Each Accident | | | | |
| Full Tort Option Selected | | | | | | |
| **D. Coverage for Damage to Your Auto** | | | | | | |
| Collision | | | | $297 | $403 | $158 |
| Actual Cash Value Less Deductible Shown Veh 2 $1000 Veh 3 $1000 Veh 4 $1000 | | | | | | |
| Other Than Collision | | | $62 | $213 | $239 | $75 |
| Actual Cash Value Less Deductible Shown Veh 1 $100 Veh 2 $100 Veh 3 $100 Veh 4 $100 | | | | | | |
| **First Party Benefits** | | | | | | |
| First Party Benefits 25,000 Medical Expense 1,500 Funeral Expense 50,000 Income Loss 5,000 Accidental Death | | | $219 | $217 | $273 | $146 |
| Full Tort Option Selected | | | | | | |
| **OPTIONAL COVERAGE** | | | | | | |
| Transportation Expenses | $30 Per Day $900 Per Accident | | | $36 | $36 | $36 |
| **Annual Premium Per Vehicle:** | | | $786 | $1,366 | $1,715 | $813 |

Safe Driver Insurance Plan Surcharge: $272.00

**EXHIBIT "A"**      **PAGE A4**

## COVERAGE INFORMATION *(continued)*

| Total Annual Policy Premium: | $4,952.00 |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

## DISCOUNTS AND BENEFITS

Your discounts and benefits have been applied to your Total Annual Policy Premium.

### VEHICLE DISCOUNTS

|  | VEH 1 | VEH 2 | VEH 3 | VEH 4 |
|---|---|---|---|---|
| Anti-Lock Braking System | | Yes | Yes | Yes |
| Anti-Theft Device(s) | | Yes | Yes | Yes |
| Passive Restraint | Yes | Yes | Yes | Yes |

### POLICY DISCOUNTS

- MEMBERS® Auto and Homeowners Insurance Program
- Good Student
- Preferred Auto Rating Plan (Preferred Driver)
- Multi-Car

## DRIVER INFORMATION

| DRIVER NAME | LICENSE NUMBER | STATE | DATE OF BIRTH |
|---|---|---|---|
| 1  Felix Rodriguez | | PA | |
| 2.  Amanda Rodriguez | | PA | |
| 3.  Vilmaria Rodriguez | | PA | |
| 4.  Amanda Rodriguez-Collazo | | PA | |

To ensure proper coverage, please contact us to add drivers not listed above.

## SAFE DRIVER INSURANCE PLAN

Safe Driver Insurance Plan Surcharge: $272.00

| As A Result Of: | Violation | SC0 | No Charge |
|---|---|---|---|
| | Accident | SC1 | 25% Charge |

Surchargeable Incidents:

| Driver | Incident Date | Incident |
|---|---|---|
| 2 | 10/25/2008 | Accident |

## ENDORSEMENTS - CHANGES TO YOUR POLICY

Amendment of Policy Provisions - Pennsylvania  AS3692 12 10
Uninsured Motorists Coverage - Pennsylvania (Stacked)  AS3689 12 10
Underinsured Motorists Coverage - Pennsylvania (Stacked)  AS3691 12 10
Pennsylvania First Party Benefits Coverage Endorsement  PP 05 51 11 92
Split Underinsured Motorists Limits Pennsylvania (Stacked)  PP 04 18 07 90
Split Uninsured Motorists Limits Pennsylvania (Stacked)  PP 04 22 07 90
New Vehicle Replacement Cost Coverage  AS2112 10 99
Optional Transportation Expenses Coverage  AS2207 02 05
Split Liability Limits  PP 03 09 04 86
Nuclear, Bio-Chemical & Mold Exclusion Endorsement  AS2221 04 05

**EXHIBIT "A"          PAGE A5**

**ENDORSEMENTS - CHANGES TO YOUR POLICY** *(continued)*

Coverage For Damage To Your Auto Exclusion Endorsement  PP 13 01 12 99
Master the First Liberty Insurance Corporation Endorsement  2320 10 89

LibertyGuard Auto Policy Declarations  provided and underwritten by
The First Liberty Insurance Corporation , Boston, MA.

This policy, including endorsements
listed above, is countersigned by:

_Stephen J. McAnn_

Authorized Representative

_David M. Frey_

President

_Dexter R. Legg_

Secretary

**EXHIBIT "A"**          **PAGE A6**

LibertyGuard Auto Policy Declarations
The First Liberty Insurance Corporation
Boston, Massachusetts

 **Liberty Mutual.**

YOUR POLICY NUMBER:   AO6-288-343140-70  1   3          THESE DECLARATIONS EFFECTIVE:      06/16/11
NAMED INSURED AND MAILING ADDRESS:
Felix Rodriguez
Amanda Rodriguez
3923 Linden St
Bethlehem PA 18020-4556

| VEH | USE | TAX TERR | TOWN/COUNTY CODE | RATE TERR | IO | MFPAT | PF | FRS | ED | INSP | OSR | CLASS CODE | SYM | ANN MILE | RATING BANDS |
|-----|-----|----------|------------------|-----------|----|-------|----|-----|----|------|-----|------------|-----|----------|--------------|
| 1 | 01 | 0000 | 000 | 058 | 4 | YYY | 1 | 00 | 1 | 00 | N | 09 | | | |
| 2 | 01 | 0000 | 000 | 058 | 4 | N10 | 2 | 00 | 4 | 60 | N | 60 | | | |
| 3 | 01 | 0000 | 000 | 058 | 4 | YYY | 1 | 00 | 4 | 00 | N | 39 | | | |
| 4 | 01 | 0000 | 000 | 058 | 4 | YYY | 1 | 00 | 2 | 00 | N | 49 | | | |

RESTRAINT 311800                          USH  00  CSH  00  S/O 412    REP  0000   N/R   3   FY   08   POL.CD   10   MAIL     RQ      AMT 813
JACKET  3075 1289                     ISSD 05/16/11      4120196591THOMAS

COST NEW
MSC TIER   088

| VEH | COLL EDUC | DEF DRVR | DRVR TRNG | GOOD STU | MULTI CAR | PARP | ADDL DISC | GOOD DRVR/LPD | SR ACCID PREV | TRVL- LINK | TIER PRFD | FL PRFD | FIN STAB | TEEN SMART | BIKE TYPE | AGE CLASS FACT | |
|-----|-----------|----------|-----------|----------|-----------|------|-----------|---------------|---------------|------------|-----------|---------|----------|------------|-----------|----------------|--|
| 1 | | | | No | Yes | Yes | | | | | | | | | | 1.000 | |
| 2 | | | | No | Yes | No | | | | | | | | | | 1.000 | |
| 3 | | | | Yes | Yes | No | | | | | | | | | | 1.000 | |
| 4 | | | | No | Yes | Yes | | | | | | | | | | 1.000 | |

CLIENT# 00000000061491  GRADE          PRU NUM:               AGT NUM:            AGT OFF:          DIST CHAN  005    APT.   10
                CAP FACT:   1      RATE CAPPING FACTOR:      1.000    GOLD TIER:              REPORTING CLIENT NUM.   00000000061491
EARLY SHOP FACT: 1.000     MTA TARGET TIER:     PERSISTENCY DISC: No
TERM FACTOR: 0              ORIGINAL POLICY INCEPTION DATE: 06/16/2008

| VSR VEH | BI FACTOR | BI SCORE | COLL FACTOR | COLL SCORE | COMP SYMBOL | COLL SYMBOL | NEW LM | VEHICLE SAFETY DEVICES | HYBRID | ANTI THEFT | NEWLY INDEP | NEW MOVE | EFT DISC | PAYROLL DISC | PIF DISC | SAFE DRVR |
|---------|-----------|----------|-------------|------------|-------------|-------------|--------|------------------------|--------|------------|-------------|----------|----------|--------------|----------|-----------|
| 1 | | | | | 13 | 13 | | | | | | | | | | |
| 2 | | | | | 23 | 23 | | | | | | | | | | |
| 3 | | | | | 19 | 19 | | | | | | | | | | |
| 4 | | | | | 14 | 14 | | | | | | | | | | |

| VEH | NEWLY WED | TEEN DRIVER | MULTI POL | MULTI CAR |
|-----|-----------|-------------|-----------|-----------|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |

| OPER | NEW GRAD | STUD AWAY | NEW RETIRE | PAR TEEN | MIL | ACC PREV | DRVR TRNG | GOOD STUD | TEEN SMART |
|------|----------|-----------|------------|----------|-----|----------|-----------|-----------|------------|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States
and Canada. Please contact your service office shown on your Declarations
Page to report losses, or for any changes or questions about your insurance.
Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

AUTO 3075 R1 Ed. 12-89



**EXHIBIT "A"**          **PAGE A8**

**LIBERTYGUARD AUTO POLICY**
**QUICK REFERENCE**
**DECLARATIONS PAGE**



Your Name and Address
Your Auto or Trailer
Policy Period

| Coverages and Amounts of Insurance | Beginning On Page |
|---|---|
| Agreement | 1 |
| Definitions | 1 |

**PART A - LIABILITY COVERAGE**

| | |
|---|---|
| Insuring Agreement | 2 |
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 3 |
| Out of State Coverage | 3 |
| Financial Responsibility | 3 |
| Other Insurance | 3 |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 3 |
| Exclusions | 3 |
| Limit of Liability | 4 |
| Other Insurance | 4 |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | |
|---|---|
| Insuring Agreement | 4 |
| Exclusions | 5 |
| Limit of Liability | 5 |
| Other Insurance | 5 |
| Arbitration | 5 |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | |
|---|---|
| Insuring Agreement | 6 |
| Transportation Expenses | 6 |
| Exclusions | 6 |
| Limit of Liability | 8 |
| Payment of Loss | 8 |
| No Benefit to Bailee | 8 |
| Other Sources of Recovery | 8 |
| Appraisal | 8 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

| | |
|---|---|
| General Duties | 8 |
| Additional Duties for Uninsured Motorists Coverage | 8 |
| Additional Duties for Coverage for Damage to Your Auto | 8 |

**PART F - GENERAL PROVISIONS**

| | |
|---|---|
| Bankruptcy | 9 |
| Changes | 9 |
| Fraud | 9 |
| Legal Action Against Us | 9 |
| Our Right To Recover Payment | 9 |
| Policy Period And Territory | 9 |
| Termination | 10 |
| Transfer Of Your Interest In This Policy | 10 |
| Two Or More Auto Policies | 11 |
| *MUTUAL POLICY CONDITIONS | 11 |

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

B. "We," "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks or boldfaced when used.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van that:

(1) has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) is not used for the delivery or transportation of goods and materials unless such use is:

(a) incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) for farming or ranching.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. breakdown;  d. loss; or
b. repair;  e. destruction.
c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

EXHIBIT "A"  PAGE A10



**PART A - LIABILITY COVERAGE**

**INSURING AGREEMENT**

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured." We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

**SUPPLEMENTARY PAYMENTS**

In addition to our limit of liability, we will pay on behalf of an "insured:"

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

**EXCLUSIONS**

A. We do not provide Liability Coverage for any person:

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that person.

3. For "property damage" to property:
   a. rented to;
   b. used by; or
   c. in the care of;
   that person.
   This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. selling;     d. storing; or
   b. repairing;   e. parking;
   c. servicing;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. you;
   b. any "family member;" or
   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:
   a. private passenger auto;
   b. pickup or van that you own; or

**EXHIBIT "A"**          **PAGE A11**



c. "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

   a. is an insured under a nuclear energy liability policy; or

   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. American Nuclear Insurers;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle, other than "your covered auto," which is:

   a. owned by you; or

   b. furnished or available for your regular use.

3. Any vehicle, other than "your covered auto," which is:

   a. owned by any "family member;" or

   b. furnished or available for the regular use of any "family member."

   However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   a. owned by a "family member;" or

   b. furnished or available for the regular use of a "family member."

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any

one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured."

   We will pay only those expenses incurred within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member:"

   a. while "occupying;" or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto."

### EXCLUSIONS

We do not provide Medical Payments Coverage

Page 3 of 11



for any person for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."

5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by you; or
   b. furnished or available for your regular use.

6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. war (declared or undeclared);

c. civil war;

d. insurrection; or

e. rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. nuclear reaction;
   b. radiation; or
   c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member."

2. Any other person "occupying" "your covered auto."

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

**EXHIBIT "A"**          **PAGE A13**



C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. you or any "family member;"

   b. a vehicle which you or any "family member" are "occupying;" or

   c. "your covered auto."

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member."

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

3. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does

not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

   a. workers' compensation law; or

   b. disability benefits law.

C. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

**OTHER INSURANCE**

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this Part; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will

Page 5 of 11


Liberty Mutual.

select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood
7. Malicious mischief or vandalism;
8. Riot or Civil Commotion;
9. Contact with bird or animal; or
10. Breakage of glass

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any

"family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

### TRANSPORTATION EXPENSES

In addition we will pay, without application of a deductible, up to $15 per day, to a maximum of $450, for:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2. Loss of use expenses for which you become legally responsible in the event of the total theft of a "non-owned auto." This applies only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto."

We will pay only expenses incurred during the period:

1. Beginning 48 hours after the theft; and
2. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

### EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This exclusion (1.) does not apply to a share-the-expense car pool.

**EXHIBIT "A"**    **PAGE A15**



2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even If accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to:

   a. any electronic equipment designed for the reproduction of sound, including, but not limited to:

     (1) radios and stereos;

     (2) tape decks; or

     (3) compact disc players;

   b. any other electronic equipment that receives or transmits audio, visual or data signals, including, but not limited to:

     (1) citizens band radios;

     (2) telephones;

     (3) two-way mobile radios;

     (4) scanning monitor receivers;

     (5) television monitor receivers;

     (6) video cassette recorders;

     (7) audio cassette recorders; or

     (8) personal computers;

   c. tapes, records, discs, or other media used with equipment described in a. or b.; or

   d. any other accessories used with equipment described in a. or b.

This exclusion (4.) does not apply to:

   a. equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in "your covered auto" or any "non-owned auto;" or

   b. any other electronic equipment that is:

     (1) necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

     (2) an integral part of the same unit housing any sound reproducing equipment described in a. and permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto" normally used by the manufacturer for installation of a radio.

5. Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member:"

   a. engaged in illegal activities; or

   b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. awnings or cabanas; or

   b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or avoidance of radar.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. special carpeting and insulation, furniture or bars;

   b. facilities for cooking and sleeping;

   c. height-extending roofs; or

   d. custom murals, paintings or other decals or graphics.

**EXHIBIT "A"**     **PAGE A16**



11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

   a. selling;  d. storing; or
   b. repairing;  e. parking;
   c. servicing;

   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

   1. Actual cash value of the stolen or damaged property; or

   2. Amount necessary to repair or replace the property.

   However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

   1. You; or

   2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

   1. Any coverage provided by the owner of the "non-owned auto;"

   2. Any other applicable physical damage insurance;

   3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   1. Pay its chosen appraiser; and

   2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

   1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   2. Promptly send us copies of any notices

   or legal papers received in connection with the accident or loss.

   3. Submit, as often as we reasonably require:

      a. to physical exams by physicians we select. We will pay for these exams.

      b. to examination under oath and subscribe the same.

   4. Authorize us to obtain:

      a. medical reports; and

      b. other pertinent records.

   5. Submit a proof of loss when required by us.

EXHIBIT "A"          PAGE A17



C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection

with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

Page 9 of 11



2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. returning this policy to us; or

   b. giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. at least 10 days notice:

      (1) if cancellation is for nonpayment of premium; or

      (2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. at least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. for nonpayment of premium; or

   b. if your driver's license or that of:

      (1) any driver who lives with you; or

      (2) any driver who customarily uses "your covered auto;"

      has been suspended or revoked. This must have occurred:

      (1) during the policy period; or

      (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

   c. if the policy was obtained through material misrepresentation.

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. If the policy period

is other than 1 year, we will have the right not to renew or continue it only at each anniversary of its original effective date.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. **Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued, renewed or continued:

   a. requires a longer notice period;

   b. requires a special form of or procedure for giving notice; or

   c. modifies any of the stated termination reasons;

   we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with

Page 10 of 11



respect to the representative's legal responsibility to maintain or use "your covered auto."

B. Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

PRESIDENT

SECRETARY

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission
Copyright, Insurance Services Office, Inc., 1988

**EXHIBIT "A"** **PAGE A20**



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**AMENDMENT OF POLICY PROVISIONS - PENNSYLVANIA**

AS 3692 12 10

## I.   DEFINITIONS

The Definitions section is amended as follows:

A.  The following is added to Definition A.:

3.  The partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

The above, only applies if the civil union, registered domestic partnership or other similar union was validly entered into under the laws of any state, municipality, or territory of the United States or any other country

If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

1.  The end of 90 days following the change of residency;

2.  The effective date of another policy listing the spouse or partner defined above as a named insured; or

3.  The end of the policy period.

B.  Definition J.2. is replaced as follows:

2.  A "newly acquired auto".

C.  The following is added to the Definitions Section:

K.  "Newly acquired auto":

1.  Newly acquired auto means any of the following types of vehicles you become the owner of during the policy period:

a.  A private passenger auto; or

b.  A pickup or van, for which no other insurance policy provides coverage, that:

(1)  Has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2)  Is not used for the delivery or transportation of goods and materials unless such use is:

(a)  Incidental to your business of installing, maintaining or repairing furnishings or equipment; or

(b)  For farming or ranching.

For this definition to apply to a newly acquired auto, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2.  Coverage for a newly acquired auto is provided as described below. If you ask us to insure a newly acquired auto after a specified time period described below has elapsed, any coverage we provide for a newly acquired auto will begin at the time you request the coverage.

a.  For any coverage provided in this policy except Coverage For Damage To Your Auto, a newly acquired auto will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

However, for this coverage to apply to a newly acquired auto that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a newly acquired auto replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b.  Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1)  30 days after you become the owner if the Declarations

EXHIBIT "A"          PAGE A21



AS 3692 12 10

indicate that Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, an Other Than Collision deductible of $500 will apply.

L. "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

M. "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

II.  PART A - LIABILITY COVERAGE

Part A is amended as follows:

A.  Paragraph A. of the Insuring Agreement is replaced by the following:

INSURING AGREEMENT

We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B.  The following is added to the Supplementary Payments Provisions:

SUPPLEMENTARY PAYMENTS

In addition to our limit of liability we will pay on behalf of an "insured";

6.  Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

C.  The following is added under paragraph B. of the Exclusions section of Part A:

4.  Any vehicle, while being used for:

a.  competing in; or

b.  practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

III.  PART B - MEDICAL PAYMENTS COVERAGE

Part B is amended as follows:

The following Exclusion 11. is added under the Exclusions section:

11. Sustained while occupying any vehicle while being used for:

a.  competing in; or

Page 2 of 7
PF



b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

Part D is amended as follows:

A. Paragraph **A.** of the **Insuring Agreement** is replaced by the following:

INSURING AGREEMENT

We will pay for direct and accidental loss to your covered auto or any non-owned auto, including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one of your covered auto or non-owned auto results from the same collision, only the highest applicable deductible will apply. We will pay for loss to your covered auto caused by:

1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a non-owned auto we will provide the broadest coverage applicable to any your covered auto shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under Part D:

CUSTOMIZED EQUIPMENT COVERAGE

A. We will pay up to $500 for theft or damage to customized equipment if the loss is caused by:

1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

Payments shall be reduced by the

applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a non-owned auto keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for your covered auto or any non-owned auto.

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1. are permanently installed or attached by bolts or brackets;

2. are removable from a housing unit that is permanently installed inside the auto;

3. are permanently bonded to the vehicle by an adhesive or welding procedure; or

4. change the appearance or performance of the vehicle

including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered customized equipment.

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or

**EXHIBIT "A"**          **PAGE A23**



**Liberty Mutual.**

**AS 3692 12 10**

licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered customized equipment.

C. If you have purchased additional coverage for customized equipment we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D. The most we will pay for parts, equipment and accessories that are:

    a. not installed by the auto manufacturer or dealer and

    b. permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

However under no circumstances will we pay more than the limits identified in the declaration.

C. The **Transportation Expenses** provision is replaced by the following:

**TRANSPORTATION EXPENSES**

We will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies only in the event of the theft of your covered auto. We will pay only transportation expenses incurred during the period:

1. Beginning 48 hours after the theft; and

2. Ending when your covered auto is returned to use or we pay for its loss.

D. Exclusion 4. is replaced by the following:

    4. We will not pay for loss to equipment that is not permanently installed in or upon your covered auto or any non-owned auto. This consists of any equipment that either is designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

        • radios and stereos; tape

decks; compact disc players and burners; digital video disc (DVD) players and burners; citizens band radios; scanning monitor receivers; television monitor receivers; global positioning system (GPS) receivers and/or components; video cassette players and recorders; audio cassette recorders; or personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

E. Exclusions are added as follows:

    13. We will not pay for loss to customized equipment in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

    14. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

    15. Loss to your covered auto or any non-owned auto while the car is being used for:

        a. competing in; or

        b. practicing or preparing for

    any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

F. Paragraph B of the Limit of Liability provision is replaced by the following:

    B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the value of the vehicle not including any customized equipment.

**EXHIBIT "A"**

**PAGE A24**



AS 3692 12 10

### III. PART E - DUTIES AFTER AN ACCIDENT OR LOSS

Part E is replaced by the following:

### DUTIES AFTER AN ACCIDENT OR LOSS

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require, within 30 days of our request:

   a. To examinations by physicians we select under terms we require. We will pay for these exams.

   b. To interviews and recorded statements without the need for us to conduct an examination under oath.

   c. To examination under oath and subscribe the same.

4. Authorize us to obtain, within 30 days of our request:

   a. Medical reports; and

   b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.

5. Submit a proof of loss when required by us within 30 days of our request.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect your covered auto or any " non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if your covered auto or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

### VI. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The Fraud provision is replaced by the following:

   **FRAUD**

   This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) who:

   a. conceals or misrepresents any material fact or circumstance,

   b. makes false statements or

   c. engages in fraudulent conduct,

   any of which relate to a loss, an accident, this insurance or the application for this policy.

B. Paragraph B. Section 2. of the Our Right To Recover Payment provision is replaced by the following:

   2. Reimburse us to the extent of our payment less reasonable attorney's fees, costs and expenses incurred by that person in our collecting our share of the recovery.

C. Paragraph A. Section 2 and 3. of the Termination provision is replaced by the following:

   2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

EXHIBIT "A"          PAGE A25



AS 3692 12 10

**a.** At least 15 days notice of cancellation:

   (1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

   (2) For nonpayment of premium;

   (3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

**b.** At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**D. Paragraph B.** of the Termination provision is replaced by the following:

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail to the named insured shown in the Declarations at the address shown in this policy:

**1.** At least 15 days notice before the end of the policy period:

   **a.** For nonpayment of premium; or

   **b.** If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

**2.** At least 60 days notice before the end of the policy period in all other cases.

However, our right to non-renew the policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**E. Paragraph C.** of the Termination provision is replaced by the following:

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**F. Paragraph D.** of the Termination provision is replaced by the following:

**D. Other Termination Provisions.**

**1.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**2.** If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**3.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**G.** The **TRANSFER OF YOUR INTEREST IN THIS POLICY** is replaced by the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

**1.** the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death. Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

**EXHIBIT "A"**   **PAGE A26**



AS 3692 12 10

2. the legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with regard to the representative's legal responsibility to maintain or use your covered auto.

Section 1. only applies if the civil union, registered domestic partnership or other similar union is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

H. The following provision is added:

CONSTITUTIONALITY CLAUSE The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the affect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

EXHIBIT "A"                              PAGE A27



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINSURED MOTORISTS COVERAGE - PENNSYLVANIA (NON-STACKED)**    **AS 3689 12 10**

Part C - Uninsured Motorists Coverage is replaced in its entirety by the following:

**SCHEDULE**

| UNINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. "Insured" as used in this endorsement means:
1. You or any "family member".
2. Any other person "occupying" "your covered auto".
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:
   a. You or any "family member";

b. A vehicle which you or any "family member" are "occupying"; or
c. "Your covered auto".

If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) Insolvent; or
      (2) Involved in insolvency proceedings.

However, "uninsured motor vehicle" does not include any vehicle or equipment:
1. Owned by or furnished for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:
1. By you while "occupying", or when struck by, any motor vehicle you own which is not insured for this coverage under this policy This includes a trailer of any type used with that vehicle.
2. By a "family member":
   Who owns an auto, while "occupying", or when struck by, any motor vehicle owned by you or any "family member"

Page 1 of 3



which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

b. Who does not own an auto, while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. If that person or the legal representative settles the bodily injury claim without our consent. However, this exclusion (B.1.) does not apply if such settlement does not adversely affect our rights.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that person is entitled to do so.

C. We do not provide Uninsured Motorists Coverage for "non-economic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (C.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. Except as provided in paragraph B.,the limit of liability shown in the Schedule or in the Declarations for Uninsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Uninsured Motorists Coverage shown in the Schedule or in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages, the most we will pay for "bodily injury" sustained by an "insured" other than you or any "family member" is the limit of liability shown in the Schedule or in the Declarations applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part B of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured"s" attorney either directly or as part of the payment made to the "insured".

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:
The following priorities of recovery apply.



AS 3689 12 10

**First** The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

**Second** The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

**II. PART F - GENERAL PROVISIONS**

The following is added to the Two Or More Auto Policies provision of Part F:

**TWO OR MORE AUTO POLICIES**

1. This provision does not apply to Uninsured Motorists Coverage.
2. No one will be entitled to receive duplicate payments for the same elements of loss under Uninsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

**EXHIBIT "A"          PAGE A30**



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**UNDERINSURED MOTORISTS COVERAGE - PENNSYLVANIA (STACKED)**     **AS 3691 12 10**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| UNDERINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

   a. Have been given prompt written notice of such tentative settlement; and

   b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

2. Had a reasonable opportunity to protect our interests in the suit.

B. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. For which liability coverage is provided under Part A of this policy.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

1. While "occupying" a motor vehicle owned by you or a "family member" not insured for Underinsured Motorists coverage under this policy; nor to "bodily injury" from being hit by any such motor vehicle.



**EXHIBIT "A"**          **PAGE A31**



AS 3691 12 10

2. By a "family member":

Who owns an auto, while "occupying", or when struck by, any motor vehicle owned by you or any "family" member which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

B. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. Using a vehicle without a reasonable belief that that person is entitled to do so.

C. We do not provide Underinsured Motorists Coverage for "noneconomic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "underinsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (C.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. Except as provided in paragraph B., the limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" is sustained in an accident by you or any "family member", our maximum limit of liability for all damages in any such accident is the sum of the limits of liability for Underinsured Motorists Coverage shown in the Schedule or in the Declarations applicable to each vehicle. Subject to this maximum limit of liability for all damages, the most we will pay for "bodily injury" sustained by an "insured" other than you or any "family member" is the limit of liability shown in the Schedule or in the Declarations applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

C. The damages payable under this coverage shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured". It also includes all sums paid under Part A of this policy.

D. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

E. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

**EXHIBIT "A"**          **PAGE A32**

 **Liberty Mutual.**

AS 3691 12 10

First    The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

Second   The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

**ADDITIONAL DUTIES**

A person seeking Underinsured Motorists Coverage must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**PART F - GENERAL PROVISIONS**

Part F is amended as follows:

A. The following is added to the Our Right To Recover Payment provision:

   **OUR RIGHT TO RECOVER PAYMENT**

   Our rights do not apply under paragraph A. with respect to Underinsured Motorists Coverage if we:

   1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

   2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

   1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

   2. We also have a right to recover the advanced payment.

B. The following is added to the Two Or More Auto Policies provision:

   **TWO OR MORE AUTO POLICIES**

   1. This provision does not apply to Underinsured Motorists Coverage.

   2. No one will be entitled to receive duplicate payments for the same elements of loss under Underinsured Motorists Coverage.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

**EXHIBIT "A"        PAGE A33**

POLICY NUMBER:


**Liberty Mutual.**

## FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA

PERSONAL AUTO
PP 05 51 11 92

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

**BASIC FIRST PARTY BENEFIT**

| Benefit | Limit Of Liability |
|---|---|
| Medical Expenses | $5,000 |

If indicated below or in the Declarations, the following options apply instead of the Basic First Party Benefit:

☐ **Added First Party Benefits**

| Benefits | Limit Of Liability |
|---|---|
| Medical Expenses | $_____ |
| Work Loss | $_____ subject to a maximum of $_____ per month |
| Funeral Expenses | $_____ |
| Accidental Death | $_____ |

☐ **Combination First Party Benefits**

| Benefits | Limit Of Liability |
|---|---|
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Funeral Expenses | $2,500 |
| Accidental Death | $_____ |
| Maximum Limit of Liability for the Total of All Combination First Party Benefits | $_____ |

Note: If Added First Party Benefits or Combination First Party Benefits are not shown as applicable in the Schedule or Declarations, only the Basic First Party Benefit applies.

## I. DEFINITIONS

The Definitions section is amended as follows:

**A.** "The Act" refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

**B.** The following definitions are replaced:

1. "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

2. "Your covered auto" means a "motor vehicle":

   a. To which Part A of this policy applies and for which a specific premium is charged; and

   b. For which First Party Benefits Coverage required by the Act is maintained.

**C.** The following definition is added:

"Motor vehicle" means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

1. By muscular power; or

2. On rails or tracks.

**D.** "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person while:

   a. "Occupying" "your covered auto"; or

   b. Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto".


**EXHIBIT "A"**

**PAGE A34**



If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## II. FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

#### A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of:

Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury". However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

#### B. ADDED FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Schedule or Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.

2. Work loss.

a. Loss of income. Up to 80% of gross income actually lost by an "insured" as a result of the accident.

b. Reasonable expenses actually incurred to reduce loss of income by hiring:

(1) Special help, thereby enabling an "insured" to work; or

(2) A substitute to perform the work a self-employed "insured" would have performed.

However, work loss does not include:

a. Loss of expected income or expenses incurred for services performed after the death of an "insured"; or

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work due to "bodily injury".

3. Funeral expenses. Funeral or burial expenses actually incurred if "bodily injury" causes an "insured's" death within 24 months from the date of the accident.

4. Accidental death. A death benefit paid if "bodily injury" causes the death of you or any "family member" within 24 months from the date of the accident.

We will pay accidental death to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, the benefit shall be paid to:

a. The deceased "insured's" surviving spouse; or

b. If there is no surviving spouse, the deceased "insured's" surviving children; or

c. If there is no surviving spouse or children, to the deceased "insured's" estate.

#### C. COMBINATION FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Copyright, Insurance Services Office, Inc., 1992

PP 05 51 11 92

**EXHIBIT "A"**          **PAGE A35**



Subject to the limits shown in the Schedule or Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

1. Medical expenses.

2. Work loss.

3. Funeral expenses.

4. Accidental death.

**EXCLUSIONS**

A. We do not provide First Party Benefits Coverage for "bodily injury" sustained by any person:

1. While intentionally causing or attempting to cause "bodily injury" to himself or any other person. We will not pay accidental death on behalf of that person.

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a "motor vehicle" knowingly converted by that person. This exclusion (A.4.) does not apply to:

   a. You; or

   b. Any "family member".

5. Who, at the time of the accident, is:

   a. The owner of one or more registered "motor vehicles", none of which have in effect the financial responsibility required by the Act; or

   b. "Occupying" a "motor vehicle" owned by that person for which the financial responsibility required by the Act is not in effect.

6. Maintaining or using a "motor vehicle" while located for use as a residence or premises.

7. While "occupying" a:

   a. Recreational vehicle designed for use off public roads; or

   b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for "bodily injury":

1. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:

   a. You; or

   b. Any "family member".

2. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

3. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;

   b. Radiation; or

   c. Radioactive contamination.

**LIMIT OF LIABILITY**

A. The limits of liability shown in the Schedule or Declarations for the first party benefits that apply are the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

1. Claims made;

2. Vehicles or premiums shown in the Declarations;

3. Vehicles involved in the accident; or

4. Insurers providing first party benefits.

B. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (B.) will not change our maximum limit of liability.

C. Any amounts payable under this coverage shall be excess over any amounts:

1. Paid;

2. Payable; or

3. Required to be provided;

to an "insured" under any workers' compensation law or similar law.

EXHIBIT "A"          PAGE A36



**PRIORITIES OF POLICIES**

A. We will pay first party benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category is the lowest level of priority. The priority order is:

First    The insurer providing benefits to the "insured" as a named insured.

Second   The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the Act.

Third    The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident.

Fourth   The insurer of any "motor vehicle" involved in the accident if the "insured" is not:

a. "Occupying" a "motor vehicle"; and

b. Provided first party benefits under any other automobile policy.

An unoccupied parked "motor vehicle" is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

B. If 2 or more policies have equal priority within the highest applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Schedule or Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

**NON-DUPLICATION OF BENEFITS**

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

**III. PART F - GENERAL PROVISIONS**

Part F is amended as follows:

The Our Right To Recover Payment provision does not apply.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1992

PP 05 51 11 92

**EXHIBIT "A"          PAGE A37**



**Liberty Mutual.**

### SPLIT UNDERINSURED MOTORISTS LIMITS - PENNSYLVANIA (STACKED)

PERSONAL AUTO
PP 04 18 07 90

#### SCHEDULE

| Auto Premium | Limits | |
|---|---|---|
| 1. $_____ | $_____ each person | $_____ each accident |
| 2. $_____ | $_____ each person | $_____ each accident |
| 3. $_____ | $_____ each person | $_____ each accident |

Paragraphs A. and B. of the Limit of Liability provision in the Underinsured Motorists Coverage - Pennsylvania (Stacked) endorsement are replaced by the following:

**LIMIT OF LIABILITY**

A. If "bodily injury" is sustained in an accident by you or any "family member":

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1 and A.2. above, the most we will pay for "bodily injury" sustained in such accident by an "insured" other than you or any "family member" is the each person or each accident limit of liability shown in the Schedule or in the Declarations applicable to the vehicle that the "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. If "bodily injury" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustain "bodily injury," the limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 04 18 07 90     Copyright, Insurance Services Office, Inc., 1990     Page 1 of 1



**EXHIBIT "A"**     **PAGE A38**



**PERSONAL AUTO**
## SPLIT UNINSURED MOTORISTS LIMITS - PENNSYLVANIA (STACKED)   PP 04 22 07 90

### SCHEDULE

| Auto Premium | Limits | |
|---|---|---|
| 1. $_____ | $_____ each person | $_____ each accident |
| 2. $_____ | $_____ each person | $_____ each accident |
| 3. $_____ | $_____ each person | $_____ each accident |

Paragraphs A. and B. of the Limit of Liability provision in the Uninsured Motorists Coverage - Pennsylvania (Stacked) endorsement are replaced by the following:

**LIMIT OF LIABILITY**

**A.** If "bodily injury" is sustained in an accident by you or any "family member":

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any such accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of "bodily injury" resulting from any one accident is the sum of the limits of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for "bodily injury" sustained in such accident by an "insured" other than you or any "family member" is the each person or each accident limit of liability shown in the Schedule or in the Declarations applicable to the vehicle that the "insured" was "occupying" at the time of the accident.

The maximum limit of liability is the most we will pay regardless of the number of:

1. "insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

**B.** If "bodily injury" is sustained by any "insured" other than you or any "family member" in an accident in which neither you nor any "family member" sustain "bodily injury," the limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.



**EXHIBIT "A"          PAGE A39**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## NEW VEHICLE REPLACEMENT COST COVERAGE

PERSONAL AUTO
AS 2112 10 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

In the event of a covered total loss to a new *"your covered auto" shown in the Declarations for which a specific premium charge indicates that "Collision" Coverage and/or Other Than Collision Coverage applies, the "covered auto" will be replaced at the Actual Cash Value (less any applicable deductible) without adjustments for depreciation that is referenced in the Limit of Liability B. Section of Part D of the policy.

* A new vehicle as used in this endorsement is one that has not been previously titled under the motor vehicle laws of any state.

Replacement Cost for a total loss on a new "your covered auto" applies as follows:

a.   total loss must occur during the first 12 months of insurance  coverage, and

b.   within the vehicle's first 15,000 miles,

whichever occurs first, we will pay, at our option, the full cost of repair or replacement, less the applicable deductible.

This does not apply to a substitute automobile, a non-owned automobile or a vehicle leased under a long-term contract of 6 months or longer.

The following conditions apply:

1. Our liability for any loss will not be more than the cost to replace the damaged property with:

   a. a previously untitled vehicle of the year, make, model and equipment of the damaged automobile or, if unavailable

   b. a vehicle that is most similar in class and body type to the year, make, model and equipment of the damaged automobile.

2. We will not pay for any loss before the actual repair or replacement is completed.

3. We have the right to pay the loss in money or to repair or replace the damaged automobile.

For purposes of this endorsement, Total Loss means a loss in which the cost to replace or repair the vehicle to its pre-loss condition plus salvage value, equals or exceeds the actual cost value.



## OPTIONAL TRANSPORTATION EXPENSES COVERAGE

AS 2207 02 05

The provisions and exclusions that apply to Part D - Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement.

Optional Transportation Expenses Coverage applies only if:

1. The loss is caused by other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for that auto;

2. The loss is caused by collision only if the Declarations indicate that Collision Coverage is provided for that auto; and

3. Your covered auto or the non-owned auto is withdrawn from use for more than 24 hours.  In the event of a total theft, the vehicle must have been reported missing for at least 48 hours.

### OPTIONAL TRANSPORTATION EXPENSES COVERAGE

If:

1. You choose to allow us to make the rental car arrangements with a specific vendor; and

2. You choose to bring the damaged vehicle to a Total Liberty Care (TLC) facility for all repairs.

we will pay, without application of a deductible, temporary transportation expenses incurred by you for renting a substitute auto, as defined by our rental car provider, until the repairs are completed, when there is a loss to your covered auto described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded.

If you require a vehicle which exceeds the optional limit shown on the policy Declarations Page, and we make the arrangements, you will only have to pay the difference between the expense of the vehicle you choose and the optional transportation expenses limit shown in the policy Declarations Page.

### OR

If you choose to make your own substitute vehicle arrangements, or choose a repair facility other than a Total Liberty Care (TLC) facility, or your vehicle is a declared a total loss, the following applies for expenses incurred from companies in the business of renting vehicles:

When there is a loss to your covered auto described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded, we will pay, without application of deductible, the amount shown on the policy Declarations Page to a maximum of 30 days for:

1. Additional transportation expenses incurred by you for renting a substitute auto.

2. Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of your covered auto.

3. Loss of use expenses for which you become legally responsible in the event of loss to a non-owned auto.

All coverage provided by this endorsement shall only apply once for any single occurrence.  Our payment will be limited to that period of time reasonably required to repair or replace your covered auto or the non-owned auto.

(Includes copyrighted material of Insurance Services Office, Inc., with its permission)



**EXHIBIT "A"**          **PAGE A41**



## SPLIT LIABILITY LIMITS

PP 03 09 04 86

### SCHEDULE

| | | |
|---|---|---|
| Bodily Injury Liability | $ _____ | each person |
| | $ _____ | each accident |
| Property Damage Liability | $ _____ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 09 04 86

Copyright, Insurance Services Office, Inc., 1985



**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD EXCLUSION ENDORSEMENT**          AS 2221 04 05

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Aside from such losses caused by terrorism activities, we do not provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused:

    a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b. Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We do not provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria. This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2221 04 05                          © 2003 Liberty Mutual Insurance Company



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1999

**EXHIBIT "A"**          **PAGE A44**



## MASTER THE FIRST LIBERTY INSURANCE CORPORATION ENDORSEMENT

The policy is amended by the following:

1. It is agreed that wherever the words "Liberty Mutual Fire Insurance Company" appear in this policy the words "The First Liberty Insurance Corporation" shall apply in place thereof.

2. It is further agreed that any statement that the policy is classified in a particular dividend class is deleted.

3. It is further agreed that all references to the named insured's membership in the company and entitlement to vote at meetings of the company, and to the place, date and time of the company's annual meeting are deleted.

4. It is further agreed that the Mutual Policy Conditions provision is deleted.

All other terms and conditions of the policy remain unchanged.

2320 (10/89)

08/13/2008  16:34    7245570378              LIBERTY MUTUAL              PAGE  05/12



## PENNSYLVANIA COLLISION DEDUCTIBLE OPTION FORM

Pennsylvania law requires that we provide a $500 Collision deductible for any automobile insurance policy providing Collision coverage.  You may select a Collision deductible amount lower or higher than the $500 deductible required by law.  Selecting a deductible amount lower than $500 will increase the cost of your Collision coverage.

The table below shows our available Collision deductible amounts.  The adjacent percentages illustrate the approximate difference in premiums between each deductible amount.

| Deductible Amount | Percentage Premium Difference |
|---|---|
| $ 100 | 144% |
| 200 | 125% |
| 250 | 119% |
| 500 | 100% Base |
| 1000 | 63% |

For example, if your $500 Collision deductible premium is $100, then the cost for the $100 Collision deductible would be approximately $144.  Your cost for $1000 Collision deductible would be $63.

Please indicate your selection below:

| | Vehicle Description (Year, Make and Model) | | | Collision Deductible Amount |
|---|---|---|---|---|
| Vehicle 1: | 2003 | HOND | PILOT | 500 |
| Vehicle 2: | | | | |
| Vehicle 3: | 2000 | HOND | PRELUDE | 1,000 |
| Vehicle 4: | 2003 | HOND | CIVIC | 1,000 |

Policy Number: AO6-288-343140-70    3

_____F. J. Y. Rod._____
Signature of Named Insured

_____FELIX RODRIGUEZ_____
Named Insured (Please Print)

_____8/15/08_____
Date

PMKT 110                    Liberty Mutual Insurance Group                    FF

The following Sections of this form are for your selection of the available Uninsured Motorists Coverage and Underinsured Motorists Coverage options. Your premium charge will vary depending on your Tort Option Selection and whether you have selected the stacked or non-stacked limit option. Your Liberty Mutual Sales/ Service Representative will provide you with the Uninsured Motorists Coverage and Underinsured Motorists Coverage premium charges for the coverage amount, limits and options you select. Please indicate your choices by checking the appropriate box.

### UNINSURED AND    UNDERINSURED MOTORISTS COVERAGE AMOUNT SELECTION

I have checked the amount of Uninsured Motorists Coverage I wish to have:

| SEPARATE LIMIT POLICIES (per person/per accident) | SINGLE LIMIT POLICIES (per accident) |
|---|---|
| ☐ $ 15,000/ 30,000 | ☐ $  15,000/   30,000 |
| ☐   25,000/ 50,000 | ☐   35,000 |
| ☒   50,000/100,000 | ☐   50,000 |
| ☐ 100,000/300,000 | ☐   100,000 |
| ☐ 250,000/500,000 | ☐   300,000 |
| | ☐   500,000 |
| | ☐ 1,000,000 |

I have checked the amount of Underinsured Motorists Coverage I wish to have:

| SEPARATE LIMIT POLICIES (per person/per accident) | SINGLE LIMIT POLICIES (per accident) |
|---|---|
| ☐ $ 15,000/ 30,000 | ☐ $  15,000/   30,000 |
| ☐   25,000/ 50,000 | ☐   35,000 |
| ☒   50,000/100,000 | ☐   50,000 |
| ☐ 100,000/300,000 | ☐   100,000 |
| ☐ 250,000/500,000 | ☐   300,000 |
| | ☐   500,000 |
| | ☐ 1,000,000 |

The Uninsured Motorists Coverage and Underinsured Motorists Coverage amounts selected may not exceed your Bodily Injury Liability limit.

REMINDER:    THE PREMIUM CHARGE FOR THE UNINSURED MOTORISTS COVERAGE AND/OR UNDERINSURED MOTORIST COVERAGE LIMIT YOU SELECT WILL REFLECT THE TORT OPTION AND STACKED OR NON-STACKED LIMIT OPTION YOU HAVE CHOSEN.

"I am aware that my selections apply to myself and all family members residing in my household.  I am also aware that my selections apply throughout the policy period regardless of any change such as the replacement or addition of vehicles or drivers, and my selection also applies to all future renewals or reinstatements of this policy unless I indicate otherwise to Liberty Mutual in writing."

NAME AND ADDRESS:                              POLICY NUMBER:  AO6-288-343140-70 3

FELIX RODRIGUEZ                                SIGNATURE(S):
AMANDA RODRIGUEZ
3923 LINDEN ST
BETHLEHEM PA 18020-4556

DATE:   8/13/08

**EXHIBIT "A"**   **PAGE A47**

The following Sections of this form are for your selection of the available Uninsured Motorists Coverage and Underinsured Motorists Coverage options. Your premium charge will vary depending on your Tort Option Selection and whether you have selected the stacked or non-stacked limit option. Your Liberty Mutual Sales/ Service Representative will provide you with the Uninsured Motorists Coverage and Underinsured Motorists Coverage premium charges for the coverage amount, limits and options you select. Please indicate your choices by checking the appropriate box.

### UNINSURED AND    DERINSURED MOTORISTS COVERAGE AMOUNT SELECTION

I have checked the amount of Uninsured Motorists Coverage I wish to have:

| SEPARATE LIMIT POLICIES (per person/per accident) | SINGLE LIMIT POLICIES (per accident) |
|---|---|
| ☐ $ 15,000/ 30,000 | ☐ $  15,000/    30,000 |
| ☐  25,000/ 50,000 | ☐  35,000 |
| ☒  50,000/100,000 | ☐  50,000 |
| ☐ 100,000/300,000 | ☐  100,000 |
| ☐ 250,000/500,000 | ☐  300,000 |
| | ☐  500,000 |
| | ☐ 1,000,000 |

I have checked the amount of Underinsured Motorists Coverage I wish to have:

| SEPARATE LIMIT POLICIES (per person/per accident) | SINGLE LIMIT POLICIES (per accident) |
|---|---|
| ☐ $ 15,000/ 30,000 | ☐ $  15,000/    30,000 |
| ☐  25,000/ 50,000 | ☐  35,000 |
| ☒  50,000/100,000 | ☐  50,000 |
| ☐ 100,000/300,000 | ☐  100,000 |
| ☐ 250,000/500,000 | ☐  300,000 |
| | ☐  500,000 |
| | ☐ 1,000,000 |

The Uninsured Motorists Coverage and Underinsured Motorists Coverage amounts selected may not exceed your Bodily Injury Liability limit.

REMINDER:   THE PREMIUM CHARGE FOR THE UNINSURED MOTORISTS COVERAGE AND/OR UNDERINSURED MOTORIST COVERAGE LIMIT YOU SELECT WILL REFLECT THE TORT OPTION AND STACKED OR NON-STACKED LIMIT OPTION YOU HAVE CHOSEN.

"I am aware that my selections apply to myself and all family members residing in my household. I am also aware that my selections apply throughout the policy period regardless of any change such as the replacement or addition of vehicles or drivers, and my selection also applies to all future renewals or reinstatements of this policy unless I indicate otherwise to Liberty Mutual in writing."

NAME AND ADDRESS:                   POLICY NUMBER: AO6-288-343140-70 3

FELIX RODRIGUEZ                     SIGNATURE(S):
AMANDA RODRIGUEZ
3923 LINDEN ST
BETHLEHEM PA 18020-4556

DATE:  8/13/08

# EXHIBIT "A"           PAGE A48

A06-288-343 140-703



6/16 **TORT OPTION SELECTION - NOTICE TO NAME INSURED**

A. Limited Tort Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under the policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering unless the injuries suffered fall within the definition of serious injury as set forth in the policy, or unless one of several other exceptions noted in the policy applies. The annual premium for basic coverage as required by law under this Limited Tort option is $ 4,833. Additional coverage under this option is available at an additional cost.

B. Full Tort Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other non-monetary damages as a result of injuries caused by other drivers. The annual premium for basic coverage as required by law under this Full Tort option is $ 5,246. Additional coverage under this option is available at an additional cost.

C. You may contact your insurance agent to discuss the costs of other coverages.

D. If you wish to choose the Limited Tort option described in paragraph A, you must sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the Full Tort coverage as described in paragraph B and you will be charged the Full Tort premium.   I UNDERSTAND THAT THIS ACKNOWLEDGEMENT OF COVERAGE SELECTION SHALL BE APPLICABLE, AS OF THE DATE SPECIFIED ABOVE, TO THE POLICY OF INSURANCE IDENTIFIED ABOVE, ON ALL REPLACEMENT POLICIES AND ON ALL RENEWALS OF EITHER THIS POLICY, OR ANY REPLACEMENT POLICY, UNLESS I REQUEST IN WRITING A DIFFERENT SELECTION FOR SUCH COVERAGE.

I WISH TO CHOOSE THE LIMITED TORT OPTION DESCRIBED IN PARAGRAPH A:

Signature of Name Insured _____   Date 8/13/08

E. If you wish to choose the Full Tort option described in paragraph B, you must sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the Full Tort coverage as described in paragraph B and you will be charged the Full Tort premium.   I UNDERSTAND THAT THIS ACKNOWLEDGEMENT OF COVERAGE SELECTION SHALL BE APPLICABLE, AS OF THE DATE SPECIFIED ABOVE, TO THE POLICY OF INSURANCE IDENTIFIED ABOVE, ON ALL REPLACEMENT POLICIES AND ON ALL RENEWALS OF EITHER THIS POLICY, OR ANY REPLACEMENT POLICY, UNLESS I REQUEST IN WRITING A DIFFERENT SELECTION FOR SUCH COVERAGE.

I WISH TO CHOOSE THE FULL TORT OPTION DESCRIBED IN PARAGRAPH B:

Signature of Name Insured _____   Date _____

**EXHIBIT "A"**          **PAGE A49**



**Liberty Mutual.**

## PENNSYLVANIA COLLISION DEDUCTIBLE OPTION FORM

Pennsylvania law requires that we provide a $500 Collision deductible for any automobile insurance policy providing Collision coverage. You may select a Collision deductible amount lower or higher than the $500 deductible required by law. Selecting a deductible amount lower than $500 will increase the cost of your Collision coverage.

The table below shows our available Collision deductible amounts. The adjacent percentages illustrate the approximate difference in premiums between each deductible amount.

| Deductible Amount | Percentage Premium Difference |
|---|---|
| $ 100 | 144% |
| 200 | 125% |
| 250 | 119% |
| 500 | 100% Base |
| 1000 | 63% |

For example, if your $500 Collision deductible premium is $100, then the cost for the $100 Collision deductible would be approximately $144. Your cost for $1000 Collision deductible would be $63.

Please indicate your selection below:

| | Vehicle Description (Year, Make and Model) | | | Collision Deductible Amount |
|---|---|---|---|---|
| Vehicle 1: | 2003 | HOND | PILOT | 500 |
| Vehicle 2: | | | | |
| Vehicle 3: | 2000 | HOND | PRELUDE | 1,000 |
| Vehicle 4: | 2003 | HOND | CIVIC | 1,000 |

Policy Number: AO6-288-343140-70   3

_Signature of Named Insured_

**FELIX RODRIGUEZ**
Named Insured (Please Print)

8/13/08
Date

PMKT 110                    Liberty Mutual Insurance Group                    PF

**EXHIBIT "A"          PAGE A50**

LIBERTY MUTUAL     FAX:6022294424     Mar 9 2009 18:13     P.02

PFN NAME, POLICY NUMBER, & RENEWAL DATE
AMANDA RODRIGUEZ AO5-208-459140-70 6/16/2009

## TORT OPTION SELECTION - IMPORTANT NOTICE

MAR 0 6 2009

**Limited Tort Option** - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your rights and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under the policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering unless the injuries suffered fall within the definition of serious injury as set forth in the policy, or unless one of several other exceptions noted in the policy applies.

Your current in-force policy premium with the Limited Tort option is $ _____ . The rates are based on your driving record and the coverages you had at the time this notice was prepared. Changes you make to your policy between now and your renewal policy effective date may alter the amount you own. For example, changes could include adding or dropping a driver, changing vehicles, changing coverage amounts, relocation of residence, rate increases, or accidents and violations.

If you wish to keep the Limited Tort option, you must sign and date this notice where indicated below and return it. However, if you do not sign and return this notice within 20 days, you will be considered to have chosen the Full Tort coverage and you will be charged the Full Tort premium.

Signature of Named Insured _____      Date _____

**Full Tort Option** - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other non-monetary damages as a result of injuries caused by other drivers.

Your current in-force policy premium with the Full Tort option would be $ 3596.00 _____ . The rates are based on your driving record and the coverages you had at the time this notice was prepared. Changes you make to your policy between now and your renewal policy effective date may alter the amount you own. For example, changes could include adding or dropping a driver, changing vehicles, changing coverage amounts, relocation of residence, rate increases, or accidents and violations.

If you wish to choose the Full Tort option, you must sign and date this notice where indicated below and return it. However, if you do not sign and return this notice within 20 days, you will be considered to have chosen the Full Tort coverage and you will be charged the Full Tort premium.

Signature of Named Insured

*[signature]*      Date 2-22-09

PAUTO 1001 R1

## EXHIBIT "A"

## PAGE A51

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: Attorney for Plaintiffs

Signature: _____

Name: Michael A. Snover, Esq.

Attorney No. (if applicable): 49786

Rev. 09/2017

## CERTIFICATE OF SERVICE

AND NOW, this 1st day of June, 2018, I, Michael A. Snover, Esquire, attorney for the

Plaintiff, hereby certify that I, this day, served the within Complaint via United States Mail,

postage prepaid, addressed to as follows:

Robert E. Smith, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
P.O. Box 3118
Scranton, PA  18505-3118

Michael A. Snover, Esq.
2571 Baglyos Circle
Suite B25
Bethlehem, PA  18020
(484) 821-1005
I.D. No. 49786
Attorney for Plaintiffs